## HOWLAND and others, Executors of Hone, v. HECKSCHER and others.

In settling a debt due to an intestate, from one of his children and next of kin who is insolvent, the intestate having left a widow and nine children, there must be credited to such child, one-ninth of two thirds of the personal estate; his debt being included as a part of the assets. If the debt exceed his distributive share, it will be deemed assets to the extent of such share.

Where the widow of the intestate died before distribution,' and such insolvent child became entitled to share in her estate, as one of her legatees and next of kin; it was *held*, that the legal representatives of the intestate father, could not withhold from the widow's administrator, any part of her third of the personal property of the intestate, in order to apply it to the debt due to the latter from the insolvent next of kin.

Though the widow of an intestate may accept her third of the personal estate in stocks, securities or movables; she has no right or title to a third of any specific chattel or thing in action; and she cannot be compelled to receive either one or the other, or any thing but money.

She is in no sense, (prior to such a distinct acceptance,) a creditor of persons who stand as debtors to the intestate.

The principal trusts of the will of a decedent, having been declared void by a vice-chancellor, some years after his death; the payments made under it being sanctioned by the decree, and the widow being directed to elect between her dower and certain valid provisions made for her by the will; appeals were taken from the decree, which protracted the suit; pending the appeals, the executors continued to pay and keep their accounts as before; and the widow neglected to make her election, and died before the decision, which was an affirmance of the decree. In a suit between the executors, and the assignees of one of the next of kin, *Held*, 1. That the latter could not object to payments made under the will, prior to the decree.

2. That the payments according to the will subsequent to the vice-chancellor's decree, were not valid, and must be disallowed. And 3. That the vice-chancellor, to whom the suit on the will was remitted by the appellate court, had jurisdic-

tion to permit the widow's administrator to make the election granted to her, although the time limited for her election elapsed in her lifetime.

Where one of the next of kin, being largely indebted to the estate, made an assignment for creditors preferring that debt, and the executors besides having his distributive share, held a large fund set apart to meet legacies which were not yet payable, and the periods of payment were in part contingent; it was *held*, that the executors after applying to the debt his share of the assets in hand, must also apply the reasonable value of his interest in the surplus of the legacy fund, before enforcing payment of the balance of his debt from the assignees.

February 10, 11; May 20, 1846.

THE bill was filed in September, 1841, by the executors of John Hone, deceased, against Charles A. Heckscher and John Aspinwall, assignees of Isaac S. Hone, and John Aspinwall as administrator of Mrs. Joanna, the widow of John Hone. The following are the material circumstances on which the judgment of the court was pronounced; as ascertained from the pleadings and proofs.

John Hone died in April, 1832, seised and possessed of a very large real and personal estate, leaving a widow, and seven children and the descendants of two deceased children, his heirs at law. Isaac S. Hone was one of his children. He also left a will dated in July, 1831, by which he gave to his wife an annuity, his plate, furniture &c., and a life estate in his mansion. By a codicil in August, 1831, he gave $6000, to each of his unmarried grand-children living at his death, payable on their attaining twenty-one or marrying; and he made a special bequest of a sum of $30,000. He gave all the residue of his estate to his executors, upon trusts; by which they were to keep the property together, divide the accruing income among the nine branches of his family, and at the end of twenty-one years, or as soon thereafter as the executors should deem discreet, they were to divide the whole estate equally among the heirs, *per stirpes*.

Prior to 1836, a bill was filed to obtain a construction of the will by this court, the result of which was, that the trusts of the will as to the residue of the estate were adjudged to be void, by the vice-chancellor of the first circuit, and an intestacy was declared in respect of all his property, except the special bequest and the provisions for his widow and his unmarried grand-chil-

dren. The annuity to the widow fell with the trust estate, and as to the other bequests for her benefit, she was directed to elect between them and her right of dower within ninety days after service of a copy of the decree. By the decree, the payments made by the executors under the will, in respect of the income of the estate, were not to be disturbed. The decree of the vice-chancellor (which was affirmed,) was made May 15, 1837. For a report of the decision before the chancellor, see *Hone* v. *Van Schaick*, (7 Paige, 221 ;) and in the court of errors, S. C. 20 Wend. 564. The executors nevertheless, continued to pay under the will, until the decision in the court of last resort, which was made late in December, 1838.

On the 5th of August, 1836, Isaac S. Hone, executed an assignment of all his share of his father's estate, to Messrs. Heckscher and Aspinwall, in trust, to pay first, a debt of over $32,000, due from him to the estate of his father, and then to distribute the remainder among certain other of his creditors. His assignees were made parties to the pending suit for the construction of John Hone's will, and appealed from portions of the vice-chancellor's decree.

Mrs. Joanna Hone, the widow of the testator, died April 2, 1838, and Mr. Aspinwall became her administrator. She made no election in respect of her dower, in her lifetime. After the suit for the construction of the will was finally decided and remitted to the vice-chancellor, an application was made to him, on notice to the assignees of I. S. Hone, and the other parties, for a direction to her administrator to make the election prescribed in the decree ; and an order was thereupon made, July 8, 1839, directing him to make such election ; and within the period limited, he elected to waive the bequests in the will, and take her dower and distributive share of the estate.

In passing the accounts of the executors before the master, under the decree in the will suit, a fund of more than $100,000, was permitted to remain in their hands, to meet the legacies to the unmarried grand children ; of whom eighteen who were living at the testator's death, had not become entitled to receive their legacies, when the proofs in this cause were taken.

Serious questions arose respecting the debt of I. S. Hone to his

father's estate, and his interest as heir and next of kin in that, as well as his mother's property. His assignees received his share of the real estate of his father, but had not come into the possession of any part of the personal property. The assignees contended, that in stating the account between Isaac S. Hone and the executors of John Hone, the former was to be credited with one-ninth of such indebtedness, it being his proportion of all of the latter's personal estate as one of the next of kin. That he should have the benefit of all credits entered to him in the accounts of the executors, so long as they acted under the will, as well after the vice-chancellor's decree as before, and whether arising from real or personal estate : That he was also to be credited with one-ninth of all the moneys and property of the estate of John Hone, remaining with the executors, including his interest in the probable surplus of the legacy fund. And the widow's third of the personal estate, not having been paid over to her, or her administrator, they further insisted that I. S. Hone's account was to be credited with his share of such third part, to which he was entitled as her legatee or next of kin. They objected also that the vice-chancellor's order, permitting her administrator to make the election prescribed in the decree setting aside the will, was invalid, and inoperative, because the order was alleged to have been made *ex parte*, the time for making such election had elapsed, the decree had become the decree of the chancellor and the court of errors, and the vice chancellor could not enlarge or alter it ; and by receiving her annuity after the decree, she had declared her election to adhere to the provisions made for her by the will.

On the other hand, the executors contended that the proper credit to be made for I. S. Hone's interest in his father's estate as next of kin was one-ninth of two-thirds, instead of one-ninth of the personal estate, and the same proportion of the rents of the real estate : And that the executors of John Hone had no control over I. S. Hone's right or interest as legatee or next of kin, in his mother's estate, and could not withhold her share of the testator's personal assets from her administrator, on the ground that a part of it would belong to I. S. Hone, and he was indebted in a greater sum to his father's executors. They also insisted

that the payments made by them prior to the affirmance of the decree, were valid and proper. Some other questions of minor importance, were presented by the respective parties, which are noticed in the opinion of the court.

After the cause was at issue, a reference to a master was ordered by consent, with authority to him, to take testimony, and state the accounts between the parties. After proceeding under this order for a time, it became apparent that it would be impracticable to make any substantial progress, until some of the leading principles of the accounting were settled by the court; and the parties agreed to bring the cause to a hearing, for directions in the premises; using the testimony before the master as testimony in the cause, together with certain documentary evidence agreed upon. In this manner the case came on to be heard.

*E. Sandford*, and *J. Anthon*, for the complainants.

*W. M. Evarts* and *J. Prescott Hall*, for the assignees of I. S. Hone.

*M. S. Bidwell*, for Mrs. Hone's administrator.

THE ASSISTANT VICE-CHANCELLOR.—The order enabling Mrs. Joanna Hone's administrator to make the election granted to her in the decree of the vice-chancellor, avoiding the trusts of her husband's will, was made in a suit to which the defendants were parties. If it were irregular or erroneous, they should have proceeded to correct it in that suit. It cannot be questioned collaterally. The election to take her dower, instead of the legacy and other provisions in lieu of it, must be deemed valid; and it has relation to the date of the original decree, May 15th, 1837. The payments made to Mrs. Hone under the will prior to that date, are legalized by the decree, and are not to be disturbed.

For the same reason, the complainants are not to go back of the era of that decree, in correcting the credits which they have made to Isaac S. Hone, for his dividends payable from the estate. The decree expressly confirmed their distribution of the income,

and the evidence shows that this direction was carried out in their accounting before the master.

That accounting is not however to prevent the proper adjustment of the credits made upon their books to Isaac S. Hone, since May 15th, 1837. The decree avoiding the trusts, has ever since been in force, and there is nothing in the case which warranted the trustees and executors in making payments in conformity to those trusts, after that day. All the payments made since, must be applied and settled in conformity to the rights of all the parties.consequent upon the intestacy then established.

Applying these principles, how much have the complainants received on account of Isaac S. Hone's debt to John Hone, and how much have they in hand, or should they have retained, belonging to Isaac S. Hone, and which they had a right to apply towards that debt?

The wide difference between the views of the complainants and those of the assignees, is owing to the death of Mrs. Joanna Hone, and the consequent succession of Isaac S. Hone to a part of her estate, together with the circumstance that at her death, a great part of her property was still in the hands of the complainants, as executors of John Hone.

I have been unable to perceive why these facts should affect the account between the executors and Isaac, or how they can diminish his debt to the estate. When the assignment was executed to Messrs. Heckscher and Aspinwall, Isaac S. Hone, (as was afterwards shown by the decree of May 15, 1837,) was entitled to one-ninth part of his father's real estate, subject to his mother's dower, and to one-ninth of two-third parts of his father's personal estate, after the payment of his valid legacies. The other third of the personal property belonged to Mrs. Hone absolutely. The assignment transferred these interests of Isaac S. Hone, and nothing more, to his co-defendants.

Now the complainants have never had in their hands, *belonging to Isaac S. Hone*, any more than one-ninth of two-thirds of the personal property. While the widow lived, the other third belonged to her. On her death, it passed to her executor or administrator. He had a perfect right to demand it from the complainants. They could not resist the administrator's demand,

Howland v. Heckscher.

by showing that Isaac was indebted to them in a large sum, and that he would be entitled to receive a like sum from the administrator, as legatee or next of kin of his mother.

In the strongest point of view in which the ·defendants can present it, the case is this. The complainants owe to Mrs. Hone's administrator, one-third of their testator's personal property, which third I will assume to be $80,000. ·The administrator is bound to pay one-ninth of that sum to Isaac, and I will call that a debt from him to Isaac of $9000. Isaac owes to the complainants, as such executors, $18,000, for example. And upon this it is claimed, that the complainants may retain from the administrator, towards Isaac's debt, the $9000 which the administrator is to pay the latter; or in other words, they may pay $9000 of their debt to the· administrator, in Isaac's debt to them. Thus making an offset of Isaac's debt to their own creditor, because the latter is Isaac's debtor.

It seems manifest to me that no such right of set-off exists, either at law or in equity. If, on his mother's death, Isaac S. Hone had sold his interest in her estate; or, as was stated to be the fact in this case, had assigned it for the benefit of creditors; such an offset as is attempted here, would not avail the administrator in a suit by his vendee or assignee.

It was urged that Isaac's debt to his father's estate, was a component part of his mother's third of the personalty, and as such came to her administrator. But this is not true in point of law. Mrs. Hone was entitled to a third, not in this or that specific stock, security or debt, in which the personalty happened to be at the testator's death; but to money. She might accept stock or· securities, but she could neither compel their delivery, or be compelled to take them. Isaac S. Hone was never a debtor to her, or to her administrator, in respect of this debt, either legally or equitably. So far as it was collected, she was entitled to her third of the proceeds; and so from time to time, as collections should be made. But such third, she would receive as and towards her distributive share of the estate of John Hone, and in no sense as a creditor of Isaac S. Hone.

The simple and direct mode of ascertaining how much the

complainants ought to credit to Isaac S. Hone, in respect of his father's personal estate, was this. From the gross amount of the personalty, including Isaac's debt, deduct the legacies and other specific charges and expenses. The balance is the net distributable personal property, as to which there was an intestacy. One third of this sum belonged to the widow ; and one-ninth of the remaining two-thirds was Isaac's share, as one of the next of kin. This share the executors were entitled to retain and pass to his credit. It will be perceived that this mode assumes the debt of Isaac to be good and collectible. If his share in the estate had constituted his only means of paying the debt, the gross valuation of the personal property in ascertaining such share, would be diminished accordingly.

I believe there is no question· but that by means of his distributive share, and his assignment to the defendants, the debt to his father's estate is made good.

As the accounts have not been kept, or stated in the manner I have detailed, the most feasible plan for ascertaining how much is still due to the complainants on this debt, will be to adopt the principles now settled to the existing forms of those accounts.

Thus there must be credited to Isaac S. Hone's account, his ninth part of two-thirds of the debt itself.

The items of credit to May 15th, 1837, are to stand untouched. The credits subsequent to that time, are to be adjusted so as to give to him no more than his ninth part of two-thirds of the personal estate distributed, and the like proportion of the income of the real estate until his mother's death. After her death, he should be credited with one-ninth of the income of the real estate.

His interest in the personal property not yet distributed, must be ascertained by the master, and credited towards the debt. In arriving at this interest, the complainants must bring into the account, all payments made by them to the widow after May 15th, 1837, which became forfeited by the election made under the order of July 8th, 1839. And as to the doubtful assets, the master will ascertain their value from the best data which the parties can furnish to him. The value of Isaac S. Hone's in-

Howland v. Heckscher.

terest in the legacy fund, ought also to be computed by the master. This can be done on the principle of life annuities, with a reasonable allowance for the contingency of the female legatees marrying under the age of twenty-one years.

There is no justice or propriety in the executors requiring these assignees to pay the estate in full, when there is a fund in their own hands, in which the debtor has a vested interest; especially where the extent of that interest is not so contingent but that it may be computed with almost mathematical precision.

Credit will of course be given for the payments made by the assignees.

On the balance being reported by the master, the assignees must pay the same to the complainants. As to costs, each party may retain their own costs out of the respective estates which they represent.

Decree accordingly.